IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN CAMERON | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 18-5022 |
| YRC, INC. *D/B/A* YRC FREIGHT | : |
| AND YRC WORLDWIDE, INC. | : |

## MEMORANDUM

**SURRICK, J.**                                                                                   **FEBRUARY  14 , 2020**

Presently before the Court is Defendant YRC, Inc. d/b/a YRC Freight and YRC Worldwide, Inc.'s ("Defendants") Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 7.) For the following reasons, Defendants' Motion will be denied.

I.     **BACKGROUND**

In this employment discrimination case, Plaintiff alleges discrimination, retaliation, and failure to accommodate, all in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). Plaintiff suffers from "serious and long-term back disabilities, including scoliosis and slipped discs." (Am. Compl. ¶ 17, ECF No. 6.) His condition was exacerbated after a motor vehicle accident in January of 2018. (*Id.*) Plaintiff states that his back disabilities result in "soreness, stiffness, and aching pain, which (at times) limit[] his ability to bend, lift, and walk – among other daily life activities." (*Id.*) Plaintiff began working for Defendants as an Outbound Operations Supervisor on June 4, 2018. (*Id.* ¶ 13.) Defendant YRC, Inc. *d/b/a* YRC Freight is a transporter of industrial, commercial, and retail goods. (*Id.* ¶ 8.) Defendant YRC Worldwide, Inc. is the holding company for YRC, Inc. (*Id.* ¶ 9.)

While employed by Defendants, Plaintiff worked from 4:00 p.m. until 12:30 a.m., with some fluctuations of up to an hour earlier or later "depending upon business needs." (*Id.* ¶¶ 13,

22.) When he was hired, Plaintiff informed Defendants' management that he could only work at certain times because he had another full-time job, at which he worked from 6:00 a.m. to 1:30 p.m., and had child-care commitments. (*Id.* ¶ 23.) Defendants' management assured Plaintiff there would be no interference with his other work obligations. (*Id.*).

In July of 2018, Plaintiff informed Defendants' management of his health conditions and that he would require reasonable accommodations in the form of intermittent time off to care for and treat his back disabilities. (*Id.* ¶ 19.) In August of 2018, Plaintiff requested a "short medical leave of absence," which he took from August 28, 2018 to September 4, 2018. (*Id.* ¶ 20.) Plaintiff returned to work on September 4, 2018, but he was not permitted by Defendants' management to return to his regular 4:00 p.m. to 12:30 a.m. shift. (*Id.* ¶ 21.) Defendants' management told Plaintiff that, "as a condition for his return from medical leave," he would have to move to a "different (graveyard) shift from 12:00 a.m. until 10:00 a.m. for no less than 1 to 3 months at least." (*Id.* ¶ 22.) Defendants imposed this shift change without giving Plaintiff any "prior notice or reasonable opportunity to prepare." (*Id*. ¶ 25.) Defendants' management rejected Plaintiff's request to continue to work his normal 4:00 p.m. to 12:30 a.m. shift and knowingly and intentionally directed Plaintiff to work a shift that they knew he could not perform "without providing any logical or legitimate reason as to why." (*Id.* ¶ 26.)

Plaintiff filed a one-count Amended Complaint on February 5, 2019, alleging discrimination, retaliation, and failure to accommodate in violation of the ADA. (*See* Am. Compl. 7.) On February 19, 2019, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 7.) Plaintiff filed a Response in Opposition on March 5, 2019. (ECF No. 9.) On March 15, 2019, Defendants filed a Reply. (ECF No. 10.)

## II.     DISCUSSION

### A.     Standard of Review

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *New Jersey Carpenters and the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint has facial plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering the sufficiency of a complaint on a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

### B.     Plaintiff States a Claim for Discrimination under the ADA

"To plead a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that he is (1) disabled within the meaning of the ADA, (2) can perform the essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse employment action as a result of discrimination based on his disability." *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017) (citing *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). The only element in dispute here is the third, i.e., whether Plaintiff suffered an adverse employment action as a result of discrimination based on his disability. This element requires a "causal nexus between [the] disability" and the adverse employment action. *See Drummer v. Trustees of University of Pennsylvania*, 286 F. Supp. 3d 674, 683 (E.D. Pa. 2017); *see also Decker v. Alliant*

3

*Techs., LLC*, 871 F. Supp. 2d 413, 428 (E.D. Pa. 2012) (plaintiff "must show that his perceived disability was a 'determinative factor' in [employer's] decision to terminate" (quoting *Watson v. SEPTA*, 207 F.3d 207, 214-15 (3d Cir. 2000))). This element also requires that Plaintiff plead an "adverse employment action," *see Feliciano*, 281 F. Supp. 3d at 592, which is defined as an action that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Decker*, 871 F. Supp. 2d at 428.

Plaintiff's allegations regarding his shift change are sufficient to establish an adverse employment action. *See Isley v. Aker Philadelphia Shipyard, Inc.*, 191 F. Supp. 3d 466, 472 (E.D. Pa. 2016) ("A change in shifts can be an adverse employment action." (citing *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 788 (3d Cir. 1998) ("Assigning an employee to an undesirable schedule can be more than a 'trivial' or minor change in the employee's working conditions."))). Plaintiff's allegations regarding causation are also sufficient. Plaintiff alleges that the shift change was imposed on him "as a condition for his return from medical leave." (Am. Compl. ¶ 22.) The reasonable inferences to be drawn from Plaintiff's allegations establish that as a result of being unable to work for a few days, which was due to his alleged disability, Plaintiff was forced to take a less desirable shift, a shift that Defendants knew or suspected Plaintiff could not work. (*See id.* ¶ 23.) The immediate imposition of this scheduling change upon Plaintiff's return to work also suggests that the change in work status was a result of Plaintiff's disability and his need for a short medical leave of absence. *See Schlegel v. Koteski*, 307 F. App'x 657, 661-62 (3d Cir. 2009) (stating that causation may be established by "[a] showing of 'unusually suggestive' temporal proximity between the protected activity and the adverse action").

4

**C.     Plaintiff States a Claim for Failure to Accommodate under the ADA**

The elements of a discrimination claim and failure to accommodate claim are similar. "To state a failure to accommodate claim under the ADA, a plaintiff must allege: '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination … [which] in this context include[s] refusing to make reasonable accommodations for a plaintiff's disabilities.'" *Lucas v. City of Philadelphia*, No. 11-4376, 2013 WL 2156007, at *25 (E.D. Pa. May 17, 2013) (quoting *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 191 (3d Cir. 2009)). The final element of a failure to accommodate claim "can be satisfied by a showing either that the employer (1) refused to provide a proposed reasonable accommodation, or (2) failed to engage in an interactive process after a request for accommodation was made, though a reasonable accommodation was possible." *Id*. at *26 (citing *Solomon v. Sch. Dist. of Philadelphia*, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012)). In addition, to succeed on a failure to accommodate claim, an "employee must 'make clear that the employee wants assistance for his or her disability.'" *Bowman v. St. Luke's Quakertown Hosp.*, No. 12-797, 2012 WL 6527402, at *4 (E.D. Pa. Dec. 13, 2012) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)).

We first address whether "intermittent time off" can be a reasonable accommodation under the ADA. The Third Circuit has held that an "indefinite and open-ended period" of time off "does not constitute a reasonable accommodation." *Fogleman v. Greater Hazleton Health Alliance*, 122 F. App'x 581, 586 (3d Cir. 2004). However, that is not what Plaintiff sought from Defendants in this case. There is a body of case law holding that a "temporary period of leave

that would … render[] [the employee] able to perform the essential functions of his job" may be a reasonable accommodation. *See*, *e.g.*, *Sharbaugh v. West Haven Manor, LP*, No. 14-1723, 2016 WL 6834613, at *16 (W.D. Pa. Nov. 21, 2016) (collecting cases). That is what Plaintiff was requesting. The intermittent time off sought by Plaintiff may constitute a reasonable accommodation.

Next, we consider whether Defendants refused to make a reasonable accommodation for Plaintiff. When Plaintiff returned to work on September 4, 2018, he was told by Defendants that he would have to work the graveyard shift, a shift that Defendants knew that Plaintiff could not work. Plaintiff alleges that this constitutes a constructive discharge and was tantamount to a rejection of his request for a reasonable accommodation, intermittent time off. A failure to accommodate claim based on these circumstances is plausible.

### D. Plaintiff States a Claim for Retaliation under the ADA

"To make out a retaliation claim, the employee must allege: (1) he engaged in protected employee activity; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity." *Drummer*, 286 F. Supp. 3d at 683 (citing *Conoshenti v. PSE&G Co.*, 364 F.3d 135, 146-47 (3d Cir. 2004)). Generally, "protected activities" include "'participat[ing] in any manner in an investigation, proceeding, or hearing' under the employment-discrimination statutes." *See EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (quoting 42 U.S.C. § 12203(a)). However, the act of requesting an accommodation also constitutes protected activity. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003) (quoting *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997) ("[I]t would seem anomalous . . . to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge. This would

leave employees unprotected if an employer granted the accommodation and shortly thereafter terminated the employee in retaliation.")).

We have concluded that Plaintiff plausibly alleged an adverse employment action—the unfavorable shift change. Therefore, the only remaining question is whether that adverse employment action was causally related to the protected activity—Plaintiff's request for an accommodation. Plaintiff has sufficiently alleged causation with respect to his retaliation claim. Plaintiff requested and began a short period of medical leave in late August of 2018. Defendants imposed the shift change on him upon his return, in early September of 2018. Given the close proximity between Plaintiff's request for an accommodation and the adverse employment action, Plaintiff has plausibly established causation. *See Schlegel*, 307 F. App'x at 661-62.

## III. CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss Plaintiff's Amended Complaint will be denied.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**